Oral argument not to exceed 15 minutes per side. Mr. Weston, for the Defendant Appellant. Good morning, Your Honor. My name is Gregory Weston, and I'm representing my law firm, the Weston Firm PC. I'm here representing the Weston Firm PC. I'm here representing the Weston Firm PC. And I've reserved five minutes for rebuttal. Thank you. You may. There's two questions I'd like to focus on the most. We brought up quite a few different issues in the appeal, and those are jurisdiction and the immunity for private attorney generals. Counsel, at least from the bench's point of view, you might focus on the immunity. We may or may not, but unlikely to get into all the pendant issues, the immunity I think is the one that's really bringing it before us. You're welcome to take your time as you wish, but I give you that advice. Well, I'll start with that. Your Honor, the idea that there should be a separate distinction between private and public prosecutions is not just wrong, but it's ahistorical. The very first trials that we have in all of history are those of Socrates, and those were prosecuted by people who disagreed with Socrates and decided to bring criminal offenses against him. And that continued in Roman times. It continued in Old English times, and it continued in the United States until the late 19th century. And only then did prosecution become primarily something done by public prosecutors. Well, and when did we get prosecutorial immunity as a doctrine and the basis of that? That was much later than Socrates and the earliest prosecutions as well, because if, as you said, you didn't have public prosecutors, you wouldn't have had immunity at that time. That's a later doctrine as well, isn't it? Well, I think the immunity only arose when unhappy criminal defendants started to sue the prosecutors, and it was considered when it was initially came up, which was in the early 20th century, as an extension of judicial immunity. And they looked to the scope of judicial immunity in the sense that it was an absolute immunity rather than a qualified one for prosecutorial functions. But it certainly does include private prosecutors, and this court has ruled so in the case Gibson v. Eldridge. That's where they were in fact appointed as, in effect, a temporary or part-time public official. And in Cooper, which you also cited, in Cooper the private attorney was not acting as a public official because he was never properly appointed to serve as an assistant district attorney. So aren't all of those cases things where private people are serving as particular public officials, not simply as lawyers, private lawyers who are doing something that might be good for the public? Well, I have a two-tiered response to that. On the first one is my understanding of the Gibson case is that the prosecutor was a private law firm and they weren't appointed by the government, they were selected by the victim. And in fact, it was the same law firm that was prosecuting the victim's civil suit against the defendant. And it specifically says that that prosecutor in Eldridge was being paid by the victim. And it was that prosecutor that the circuit said, I'll just read briefly from that decision. Eldridge argues that the fact that special prosecutors are paid by the victim rather than the state makes them ineligible for prosecutorial immunity. As the district court correctly noted, however, this is not the correct inquiry. Under the Supreme Court precedent, the test for determining if absolute immunity is appropriate turns on the nature of the function performed, not on the identity of the actor who performed it. But he also had received an official government appointment as a prosecutor, had he not, and that that was the distinction in Cooper where he had not and received no immunity. Well, I don't believe anywhere in the record it talks about an official appointment, and it specifically does say that the person was selected by both the crime victim and paid by the crime victim and not the state. But there's certainly other circumstances where that applies, where there's a private law firm and it's a small county, for instance, that can't afford its own public prosecutor, and that same law firm can even represent criminal defendants at the same time it's prosecuting other criminal defendants. So the concept of prosecutor, while we're most familiar with, is primarily a public official. That's certainly not the case universally, and it's certainly not our historical experience. Within California, and I think this is actually one reason why this should be resolved on jurisdiction, is California created a statute called the Private Attorney General Statute, and the Honorable George King, the chief judge of the Central District of Los Angeles, looked at that statute, and one of the elements of that statute is did the putative private attorney general secure a public benefit for the public beyond what he could secure for his client. It's not even enough to secure an incidental public benefit in the course of pursuing a private interest. The primary goal of the suit, and it must actually be achieved, is securing a benefit for the public. When you say it must actually be achieved, that struck me. In your brief, you used the word successfully served as your exact language in your statement of the case, is protect successful private attorneys general. That also struck me as a little bit odd because prosecutors, real prosecutors, have prosecutorial immunity whether they're successful or not. So it seems an odd concept that you bring a suit, and if you get 15 cents, you're successful, and you have immunity, but if you get zero, then you don't have immunity just because the jury didn't happen to agree with you. You would think you'd either have immunity or not. I completely agree with the court, and I think the reason that I use the word successful is two things. One is to emphasize the fact that my case was successful. Usually prosecutors are sued by unhappy defendants after they lose a case. Here we won a case. Sometimes it's when they win because then they have a better claim that something was wrongfully done to them in our cases. That's what I see. Yes. Well, I was just attempting to do so narrowly, so I agree with the court that it should be broader than that. Let me take you back to Eldridge for one second because you said you didn't know. I've got it in front of me. Eldridge claims that the state's appointment of the private attorney defendants to serve as special prosecutors violated his rights. So we do know that in Eldridge they were officially appointed by the state as special prosecutors. Well, I likewise was designated by the Honorable George King as a private attorney general, and again, I think we're also looking into how exactly does California enforce its false advertising laws. I don't think that's something that this is. Is everyone that brings a suit for false advertising officially designated as a private attorney general? Do you have a piece of paper that says that? Well, the complaint says you're bringing it under that statute, but I'd again say that this should be a question. That's a little different from saying you were officially designated. I mean, I have a commission that says, you know, I am a circuit judge. Potentially. In this case, but I mean, is there such a thing in California? I'm just sort of interested. I think they potentially have a case that's a little bit weaker than mine, but they do equally have a case on that. And again, I don't think that this court, if it can avoid to, should look into this question of California state law and how California chooses to enforce its consumer fraud laws. And that's why in part I noticed the Seventh Circuit case that came out because it addressed two questions related to jurisdiction, both pendent jurisdiction and personal jurisdiction. In one question, it says... Let me break in. Do you distinguish this from various types of civil rights, civil liberties suits where you can get fees or the Equal Access to Justice Act? I mean, there are a wide variety of acts in which attorneys can receive fees because by statute, they've decided that they're doing something that is sufficiently good that we should encourage them by giving them fees. And a lot of times in a general way, those are referred to as private attorneys general. Do you distinguish those from your situation, or should those be included as well? I would say at least the one that I'm most familiar with, which is federal antitrust statute. The Supreme Court, as I noted in my brief, they specifically reconfigured standing and defenses available because they said it was so important that private attorney generals enforce it. So I do believe that someone who successfully prosecutes a private antitrust action should receive that same protection. But there's no cases or statutes that say that. It's quite rare for someone to sue the other side's litigant when that other side's successful, especially in a foreign jurisdiction. I hope that will continue to be rare, and that's just another policy reason that this court should not do so. But if I could get to the jurisdiction issue very quickly, it's not necessarily question-dependent jurisdiction, according to the Seventh Circuit. Whether or not personal jurisdiction, it says this court is entitled to entertain a threshold non-merits question, such as personal jurisdiction, at the outset. And the district court thought personal jurisdiction proper because real action knew that tactical was an Indiana company and could foresee that its misleading emails and sales would harm advanced tactical in Indiana. Walden, the U.S. Supreme Court's decision. You're reading that from the Seventh Circuit, apparently. Yes, but it's interpreting Walden, the recent U.S. Supreme Court case. Counsel, your time's up unless you want to eat into your rebuttal. You have your choice. Well, I just want to say again, I do think that the only jurisdiction claim here is that I supposedly knew by saying things about Smulker and our class action website, and that's a class action website that is similar to the one I set up in every case and has been endorsed in notice plans by judges. I have another site called Quaker Lawsuit, similar to Smulker Lawsuit, and Judge Seaborg in the Northern District of California ordered that I disseminate notice on that website. So there's no purpose of defamation here. The purpose of this is to inform my clients of it, and it should be the district judge in the class action that supervises that. That's what the U.S. Supreme Court said in Goffwell v. Bernard. The district judge supervising a class action has limited discretion but should be the judge deciding what an attorney can say about the case to potential class members. Okay, you've run down however much extra time on your rebuttal, but you have the remaining rebuttal time. Thank you. Good morning. My name is Tim Freilich, and I have the privilege of representing the J.M. Smulker Company in connection with this matter. With your permission, I intend to focus primarily on the issue that Judge Boggs indicated he wanted to entertain today, which is the primary issue on appeal, the appellant's claim of absolute prosecutorial immunity from suit, although I'm happy to answer any other questions with respect to the many, many other issues that have been briefed in connection with this matter. Initially, I'd like to address some of the statements that were contained in the reply brief, which for obvious reasons we haven't had a chance to address at this point. The first is the implication that the litigation that Smulker filed against the appellant was done in retaliation because, in Mr. Weston's words, he had been a successful private attorney general in a lawsuit out in the Central District of California before Judge King. The action below was filed on March 5th, 2013, and the order in which Judge King awarded fees was added on February 28th, 2014, almost a year later. So as a matter of temporal physics, it's impossible for this action to have been filed in retaliation for something that occurred a year later. But this whole idea of the time in its passage is absolutely crucial for purposes of understanding the issues in this appeal. And that is because throughout the principle brief and the reply brief, and today, Mr. Weston touts again and again his status as a successful private attorney general. And he bases that on the fact that Judge King awarded fees in connection with the website. And in his mind, Judge King blessed the website, and they must be fine and Smulker can have no complaint about it. But something that is important for you to recognize is the website that exists in its current form bears no relationship whatsoever to the website upon which this case is premised. You can make the argument with a straight face that the current website is the sort of website that plaintiffs normally provide to provide information to class members. You can't make that argument about the original website. The original SmuckerLawsuit.com website never mentioned the Western Firm or any law firm. The current website mentions the Western Firm and has a clickable page which includes its address, its telephone number. The original website never indicated that its purpose was to communicate with potential class members. The current website specifically mentions this. The original website never mentioned that the creator of the website was representing a purported class of plaintiffs and litigation against Smucker. The current website now specifically states this to be so. And the original website made the following factual misstatements about Smucker and its products. Smucker's products are dangerous to public health. Smucker deliberately lies to the public about his products. Smucker makes false and dangerous advertising claims to his customers. Smucker is an immoral company. That doesn't go to whether they're prosecutors or not. I mean, it's sort of good jury stuff, but you could focus on their theory that either because of the California statute or because of their general status, they're entitled to the kind of prosecutorial immunity that we deal with. I mean, that's the guts of why they're here on an interlocutory appeal. So I appreciate you're trying to put it in context, but that's not getting us to the legal point. The legal point I was trying to make, Your Honor, and I'm sorry I didn't get there fast enough, is that Judge King looked at a completely different website in awarding fees. And so you can't premise a private attorney general status on something that Judge King never saw, which is the original website. Let me get to the heart of the matter, which is the novelty of this appeal. In requesting oral argument, Mr. Weston reasoned that this case is novel because, quote, no other court of appeals has considered whether private attorneys general enjoy prosecutorial immunity. He's absolutely right about that. But I will go farther than that. As far as we can tell, no district court or state court has ever considered the issue of whether a private law firm should be afforded such immunity. We scoured the relevant California statute. We looked at its legislative history. We can find no indication that the California legislature ever intended to afford prosecutorial immunity under the private attorney general statute. We couldn't even find a law review article in which some enterprising law student postulated that it would be appropriate to award such immunity. But we do have the controlling precedent. We have the precedent of this court, and we have the precedent of the United States Supreme Court. So, for example, this court itself held in Duncan v. Peck that, quote, private parties are not eligible for immunity from suit. And the Supreme Court precedent, Forrester v. White, the Supreme Court held that there is no such thing as absolute judicial immunity. White v. Cole, it was improper to extend the doctrine of immunity to private parties. Buckley v. Fitzsimmons, which is an important case for purposes of this issue today, the court held that defamatory statements made to the press by real-life prosecutors as opposed to self-appointed ones could not be immune from suit. And then Richards v. McKnight, in which the court held that prison guards working for a private company could not assert immunity. Most recently, in Filarski v. D'Elia, the court did hold that immunity could be afforded to attorneys that work part-time for the government, but it also specifically noted that immunity should not extend to parties that had no connection to any government. So perhaps the reason this issue was so novel on appeal is that no other litigant has had the temerity in the face of this unbroken line of controlling precedent to contend that a private law firm should be afforded absolute prosecutorial immunity. What can you tell us about the California statute, which your adversary does put in capital, which I suppose is correct, calling it the private attorney general statute, as to other than simply being a way of getting attorney's fees, are there any procedures under it to have one designated as a private attorney general or is it simply attorney's fees for certain kinds of lawsuits after you succeed? It's specifically and expressly a statute designated only towards obtaining attorney's fees, and the primary way in which you become a private attorney general is to declare yourself one. There's no appointment. The judge doesn't have a ceremony in which he awards you that status. You basically proceed under the statute, notwithstanding the name of the statute. The sole purpose of the statute is to permit the award of attorney's fees in certain circumstances. There's a pretty good argument to be made that if Mr. Weston had been a bona fide, real, genuine attorney general, that he would still be liable under the statute. And the reason for that is the original website went so far beyond what is normally permissible in connection with litigation that the Supreme Court has held that a public official acting outside of his official capacity doesn't get judicial immunity. So you would argue, for example, if a regular criminal prosecutor brings a prosecution and then sets up a private website in which he defames the defendant or the defendant's lawyer in connection or a witness even, that then that wouldn't get prosecutorial immunity under our general law? That's correct, and that's clearly implicated by the Supreme Court's decision in Buckley v. Fitzsimmons. That's essentially what happened is the prosecutors, as prosecutors sometimes do, held a press conference and made statements that were defamatory about the plaintiff, and it was later found that they would be liable. The Supreme Court held they would be liable for those statements and could not claim prosecutorial immunity. The appellant claims we don't have jurisdiction, and your brief agrees. Your brief agrees that there is no jurisdiction. That's what you write in the beginning. This court has no jurisdiction to consider this matter where the appellant's ineligible for immunity. No, I think what we indicated in the brief is the court has no jurisdiction to consider dependent appellate issues. I think we specifically tie that to dependent appellate issues because those aren't properly before the court because they're not inextricably entwined with the primary issue. The sentence I'm reading is Smucker submits that the court lacks jurisdiction over the instant appeal. Don't you also sort of make the argument that he's not entitled to interlocutory appeal because his argument is so far-fetched that he can't appeal? I mean, a normal prosecutor can appeal interlocutorily, which is where we are, right? That is, if we, for whatever reason, get rid of this appeal, you've still got a lawsuit going on where you have all your charges and he has all his defenses. That's correct. We do. So I thought Judge Cook was right that you did have a kind of start-out by saying we don't have jurisdiction because this isn't a proper interlocutory appeal. That is correct. We indicate that we believe that the frivolous nature of this appeal in the absence of any support for it cedes the court of jurisdiction to hear it. So now that we've gone to the trouble of having you all here, wouldn't you rather have a decision than leave this issue out? Oh, absolutely. Because if we agree that there's no jurisdiction, then he can still pursue that claim. There's no interlocutory appeal jurisdiction. He can still pursue that claim in the suit and he can still appeal it on the merits if he loses, right? That's correct. Because this court has shown an interest in this case by accepting oral arguments. No good deed goes unpunished. Yeah. It would be our preference to have a decision in this matter so we could have some finality going forward. Anything else? Subject to your questions, that's all I have. All right. Thank you. Thank you. Mr. Weston, you have your remaining time for rebuttal. Well, on the question of whether or not there is authority for this, I'd say that there always has to be an initial case and prosecutorial immunity is a judge-made common law source. And the reason it came out is those enforcing the nation's laws and our state's laws would have to fear interference with their judgment in pursuing the public interest if they were subject to suit. And that is the exact situation here. California created this statute because it didn't believe it had the resources to enforce its false advertising laws entirely with public prosecutors. So it created this category of private attorney generals. Would you correct that the category is simply anybody who comes in asking for fees? No. The statute exists. The unfair competition law is one of the underlying laws, but it has no fee provision. And then the private attorney general statute says if you're successful in this type of suit and you satisfy, among other things, the element that you have advanced an important public interest and that was the primary purpose of your case. Not you served one incidental to your private interest, but you advanced an important public interest, only then do you qualify for that. So I disagree that it's just an interest. So there are hearings. I take it that there are hearings held to determine the answer to that question, whether the suit that was pursued actually benefited the public. Yes. I take it there are steps in that. Yes, we filed a motion and Smucker opposed it, and Judge King, over Smucker's opposition, said you qualify as a private attorney general, and that's the only reason we were able to get our fees in that case. So this is though, not though, it is after the fact in the sense that you could have a universe of lawyers who are trying to do something, and it's only because the judge ends up giving them fees that you now would say they're a private attorney general. Again, I would only argue for the most modest expansion of the law sufficient to cover the circumstance. Certainly a larger one could apply. At least it's potentially a little odd that a civil, in effect, civil court judge creates prosecutorial immunity retroactively for the people that that judge decides under some state statute meets some state statute, but that has the ancillary effect of giving them prosecutorial immunity. Well, Judge King was sitting in diversity, and I would again say that the court should be very cautious in making a novel decision under California's law under what individuals are considered prosecutors under California state statutes, and it should look at the jurisdiction questions here, which are something that it's looked at quite a bit often, and in a very similar context, the Cato decision. Is there any sort of state, federal, or intra-state problem here in the sense that, let's suppose California says that everybody that graduated cum laude from Harvard is a prosecutor. Are they going to have prosecutorial immunity whenever they do anything someplace else? I think that should be a matter for California to decide, and yes, if they're actually performing a prosecutorial function, and that's what I was doing, remember also that the law we're enforcing has punitive elements of punitive damages, mandatory attorney's fees, and other such things. Okay, counsel, I think your time has expired, unless my colleagues have other questions. Okay, thank you. The case will be submitted.